UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WARREN W. FANE, INC.,

        Plaintiff,

    v.                                No.    1:12-cv-1903

TRI-STATE DIESEL, INC.,
KENWORTH TRUCK COMPANY, and
CUMMINS NORTHEAST, INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff commenced the instant action against Defendants, alleging that they violated warranties and contracts in delivering tractors that failed to perform as promised. Presently before the Court are Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). See dkts. # 33-35.

I.       **FACTS**

This case concerns Plaintiff's purchase of ten tractors manufactured by Defendant Kenworth Truck Company ("Kenworth") from Defendant Tri-State Diesel, Inc. ("Tri-State"). The tractors' engines were manufactured by Defendant Cummins Northeast, LLC ("Cummins"). Plaintiff contends that the tractors, which were purchased to haul heavy loads as a part of Plaintiff's trucking business, were defective, did not perform properly or as promised, and caused Plaintiff's business considerable disruption and loss of income. Plaintiff alleges that Defendants' conduct breached

warranties and contracts between the parties and demands a variety of damages.

Plaintiff Warren W. Fane, Inc., is an excavating and hauling company based in Mechanicville, New York. (Defendant Kenworth's Statement of Material Facts, dkt. # 33-1 ("Kenworth's Statement"), at ¶ 1).[1] In or around September 2010, Plaintiff, through its President and Owner, Warren W. Fane, decided to purchase ten new trucks. (Id. at ¶ 2). One of the reasons for purchasing these new trucks was Plaintiff's concerns about new Environmental Protection Agency regulations. (Id.). Plaintiff also sought new trucks as part of its regular purchase of vehicles for the business. (Plaintiff's Statement of Material Facts in Response to Defendant Kenworth's Statement, dkt. # 43-1 ("Plaintiff's Response to Kenworth") at ¶ 2). Greg Fane, who had many years experience in purchasing trucks, served as Plaintiff's chief negotiator. (Kenworth's Statement, at ¶ 3-4; Plaintiff's Response to Kenworth, at ¶ 3-4). Greg and Warren Fane were both very experienced and knowledgeable in the hauling industry and in reference to the truck specifications required for efficient hauling. (Kenworth's Statement, at ¶ 5).

Defendant Cummins Northeast, LLC, ("Cummins"), is the northeast regional distributor for Cummins Inc. (Defendant Cummins Northeast, LLC's State of Material Facts, dkt. 35-1 ("Cummins Statement") at ¶ 2). Cummins provides warranty service and parts for diesel engines that Cummins, Inc., manufactures. (Id. at ¶ 3). Cummins

---

[1] The Court will cite to the Defendants' statements for material facts which are uncontested. The Court will note where disputes over facts exist. Each of the Defendants filed a statement of material facts, and Plaintiff responded to each one. The Court will add facts from the other Defendants' statements and Plaintiff's responses to them, as necessary.

does not manufacture diesel engines or sell such engines to truck manufacturers like Kenworth, but did provide repairs to the engines at issue in this case. (Id. at ¶ 4; Plaintiff's Response to Defendant Cummins Northeast, LLC's Statement of Material Facts and Statement of Additional Material Facts, dkt. #42-1, ("Plaintiff's Response to Cummins") at ¶ 4).

Plaintiff sought trucks and engines with similar capabilities to those already in its fleet. (Plaintiff's Response to Kenworth at ¶ 6). Greg Fane testified that Plaintiff had a set of specifications that it was seeking in the new trucks. (See Greg Fane Deposition, Exh. B to Defendant Kenworth's Motion for Summary Judgment, dkt. # 33, at 11-13). Plaintiff sought a thirteen-speed manual transmission, 14,600-pound front axle, 46,000-pound rear axle, a 391 gear ratio, and an engine similar to the 475-horsepower Caterpillar engines on other trucks owned by Plaintiff. (Id.). Kenworth models offered a 485-horsepower Cummins engine, which to Greg Fane seemed similar to the Caterpillar engine with which Plaintiff was familiar. (Id. at 15). Greg Fane did not do any independent research on Kenworth Trucks and Cummins engines before purchasing the truck, though he did consult with Warren Fane. (Kenworth's Statement at ¶ 7; Plaintiff's Response to Kenworth at ¶ 7). Warren Fane himself did not do research prior to purchasing trucks, though the Plaintiff notes that he "continually received literature regarding the newest lines of trucks and engines, including those manufactured by Cummins." (Kenworth Statement at ¶ 9, Plaintiff's Response to Kenworth at ¶ 9). Defendant Kenworth alleges that Warren Fane relied on information from colleagues in the trucking industry in deciding to seek trucks with a 485-horsepower Cummins engine, but did not rely on any advertising when deciding to

3

purchase the trucks. (Kenworth's Statement at ¶¶ 8, 10). Plaintiff alleges that Fane relied on the representations of Defendant's agent, Thomas Jennings, about the performance he could expect from the 485-horsepower Cummins engine. (Plaintiff's Response to Kenworth at ¶¶ 8, 10).

Plaintiff solicited prices from several dealers in the area before deciding to purchase ten Kenworth vehicles from Defendant Tri-State. (Kenworth Statement at ¶ 11). Plaintiff alleges that price alone did not guide its decision to purchase the trucks from Defendants; Plaintiff also relied on assurances from Defendant that the trucks would offer performance comparable to Plaintiff's current fleet. (Plaintiff's Response to Kenworth at ¶ 11). Plaintiff purchased eight tandem trucks and two tri-axle trucks. (Kenworth Statement at ¶ 12). Warren and Greg Fane negotiated the truck sale over the telephone with Thomas Jennings. (Id. at ¶ 13; Plaintiff's Response to Kenworth at ¶ 13). They did not meet Jennings in person or inspect any trucks before the purchase. (Id.). Plaintiff initially relayed exact specifications to Defendant, including the purchase of a 485–horsepower Cummins engine. (Kenworth Statement at ¶ 14; Plaintiff's Response to Kenworth's Statement at ¶ 14). Plaintiff alleges that Thomas Jennings recommended that Fane purchase the trucks at issue. (Plaintiff's Statement at ¶ 14). On Jennings' recommendation, Plaintiff purchased trucks with horsepower greater than the 485-horsepower engines that Plaintiff originally sought. (Kenworth Statement at ¶ 15). Jennings made this recommendation after being informed of how Plaintiff intended to use the trucks. (Id.). The parties disagree about whether Jennings actually recommended to Greg Fane that Plaintiff purchase trucks with 500-horsepower Cummins engines. (See Kenworth's Statement at ¶¶ 15-16; Plaintiff's Response to

4

Kenworth's Statement at ¶¶ 15-16). Defendant alleges that Jennings recommended purchasing a 525-horsepower engine, while Plaintiff insists that Jennings did not recommend an engine that large. (Kenworth's Statement at ¶ 17; Plaintiff's Statement at ¶ 17).

Plaintiff placed an order for the ten Kenworth trucks from Tri-State on August 16, 2010. (Kenworth's Statement at ¶ 18). The trucks each had a 500-horsepower Cummins ISXI5 engine. (Id.; Cummins Statement at ¶ 9). Tri-State inspected the trucks upon receipt. (Kenworth's Statement at ¶ 19). Greg Fane periodically examined these trucks as they arrived at Tri-State to ensure that they contained all of the components that Plaintiff had requested. (Id. at ¶ 20). William Deegan, Plaintiff's office manager, inspected the trucks to ensure that they matched the purchase orders when those trucks were delivered to Plaintiff. (Id. at ¶ 21). Deegan's inspections revealed that the trucks matched the specifications required in the purchase contract, with the exception that two trucks had a lower rating on the axles than requested. (Id. at ¶ 22). Plaintiff denies that the trucks matched the requirements in the purchase order, but "admits that based upon Mr. Deegan's inspection of the trucks it appeared that, minus two trucks with an incorrect rating, the trucks delivered matched the specifications agreed to by Plaintiff and Tri-State." (Plaintiff's Response to Kenworth's Statement at ¶ 22). Plaintiff admits that Tri-State corrected the improper axle ratings when brought to Defendant's attention. (Id. at ¶ 23). Plaintiff eventually approved and took possession of the ten trucks. (Kenworth's Statement at ¶ 24). Plaintiff did not have any contact with anyone at Defendant Kenworth before taking delivery of the trucks. (Id. at ¶ 25).

When Plaintiff agreed to purchase the trucks, Plaintiff received and executed Retail Purchase Orders for the two tri-axle trucks and eight tandem tractors. (Id. at ¶ 26). The Purchase Orders contained all the specifications for the trucks Plaintiff purchased. (Id. at ¶ 27). They did not contain any estimates for fuel mileage. (Id. at ¶ 29). The Orders indicated that Plaintiff intended to purchase an extended warranty for five years and 400,000 miles on the Cummins engine. (Id. at ¶ 28). Plaintiff executed the Retail Purchase Orders, which indicates that Plaintiff approved the specifications contained in the Orders. (Id. at ¶ 30). Plaintiff contends, however, that Plaintiff's acceptance of the specifications contained on the Orders was premised, in part, on Thomas Jennings' promises about the trucks' capabilities. (Plaintiff's Response to Kenworth at ¶ 30).

In or about November 2010, Jennings provided Plaintiff with Kenworth's invoices for the purchase, as well as the Kenworth Truck Company Limited Warranty Agreement–Class 8 Standard Service Warranty, the Cummins Plan 11 Warranty Agreement and a form for component extended coverage election forms. (Kenworth's Statement at ¶ 31). Jennings also traveled to Plaintiff's facility to go over all of the documents with Plaintiff prior to having Plaintiff execute them. (Id. at ¶ 32). Jennings specifically reviewed and discussed the Kenworth Warranty and the Cummins Warranty with Plaintiff. (Id. at ¶ 33). Plaintiff signed the invoices and the Kenworth Warranty. (Id. at ¶ 34). Plaintiff declined extended warranties on the components, but did sign an extended Cummins Warranty. (Id. at ¶ 35).

The Kenworth Warranty expressly disclaims any warranties other than those contained in the agreement, and expressly disclaims any warranties for merchantability

or fitness for a particular purpose.  (Id. at ¶ 36).   The Kenworth warranty also excludes from coverage the engine or engine accessories.  (Id. at ¶ 37).  The Kenworth warranty also provides that the warranty applies only to original factory equipment and is subject to the terms and conditions contained in the warranty.  (Id. at ¶ 38).  The warranty limits remedies under the warranty to repair or replacement of failed parts.  (Id. at ¶ 39).  No coverage is provided for incidental and consequential damages.  (Id.).  Warren Fane signed the warranty on Plaintiff's behalf.  (Id. at ¶ 40).

The warranty provided by Defendant Cummins applied expressly to the new EPA 2010 ISXI1.9 and ISXI5 series engines that had been sold by Cummins.  (Id. at ¶ 41).  The Cummins warranty covered any failures of the Engine under normal use and service caused by defects in Cummins material or factory workmanship.  (Id. at ¶ 42).  Cummins promised to pay for all parts and labor needed to repair damage to the engine from warrantable failure.  (Id. at ¶ 43).  Plaintiff purchased an extended warranty, which increased the warranty from two years and 250,000 miles to five years and 500,000 miles.  (Id. at ¶ 44).

Warren Fane admitted at his deposition that the instant action in this case concerns the performance of the Cummins engine.  (Id. at ¶ 45).  Plaintiff acknowledges that the case concerns problems with the engine, but alleges as well that the lawsuit concerns the supposed failure of Kenworth and Tri-State to address problems with the vehicles and engines at issue.  (Plaintiff's Response to Kenworth at ¶ 45).  The engines in the trucks Plaintiff purchased suffered from performance issues. (Kenworth's Statement at ¶ 46).   Plaintiff emphasizes that problems with the trucks' fan hubs and flexible exhaust pipes also occurred.  (Plaintiff's Response to Kenworth's

7

Statement at ¶ 46). Problems with the trucks' engines included lack of hauling power, backfiring and/or coughing, lurching, constant illumination of check-engine lights and engine deratings, which required Plaintiff to take the trucks out of service. (Kenworth's Statement at ¶ 47). Plaintiff blamed the problems with coughing, loss of power, lurching and poor fuel mileage on the engines. (Id. at ¶ 48). The trucks jerked when ascending on elevated roads, had a coughing problem that appeared to stem from the trucks' turbo chargers, and suffered breakdowns due to engine issues. (Id. at ¶ 50). The fuel mileage on the trucks was less than that on comparable vehicles in Plaintiff's fleet. (Id. at ¶¶ 51-52). All ten of the trucks Plaintiff purchased had similar problems. (Id. at ¶ 53).

In November 2011, Cummins replaced the turbo charges on every truck and recalibrated the engines' Electronic Control Modules to increase their horsepower from 500 to 525. (Id. at ¶ 54). Kenworth alleges that this repair resolved the coughing and lurching issues, but that problems with engine power and fuel economy persisted. (Id. at ¶ 55). Without pointing to contrary evidence, Plaintiff denies these claims. (Plaintiff's Response to Kenworth's Statement at ¶ 55). The deposition of William Deegan, cited by Defendant for this proposition, indicates that the repairs made the coughing stop, but that other problems persisted. (William Deegan Deposition, Exh. C to Defendant Kenworth's Motion, at 56). The parties disagree over whether Defendant ever requested that Tri-State take the trucks back and refund the purchase price. (Kenworth's Statement at ¶ 56; Plaintiff's Response to Kenworth at ¶ 56). Plaintiff informed Defendant of the problems with the truck and demanded an adequate remedy. (See Exh. I to Plaintiff's Response, dkt. # 49).

Faced with problems that were "continual," William Deegan began keeping a handwritten log of the problems and the amount of time those problems kept trucks out of service. (Kenworth's Statement at ¶ 57). Defendant contends that Plaintiff eventually created a truck-by-truck table of problems, testing, and any resolution of those problems from Deegan's notes. (Id. at ¶ 58). Plaintiff admits to using the notes to respond to discovery requests. (Plaintiff's Response to Kenworth at ¶ 58). The notes identified engine problems. (Kenworth's Statement at ¶ 59). They also described a variety of efforts to make the trucks function as Plaintiff expected. (Kenworth's Statement at ¶ 60; Plaintiff's response to Kenworth's Statement at ¶ 60).

Beyond issues with the engines, the charts created by Plaintiff also note numerous problems with air sensors, flex pipes, and fan hubs, which were covered by the Kenworth Warranty. (Kenworth's Statement at ¶ 61; see also Exh. A to Plaintiff's Brief in Opposition to Kenworth's Motion, dkt. # 43-3). Deegan and Warren Fane admitted that the exhaust pipe and fan hub replacements were minor jobs. (Kenworth's Statement at ¶¶ 62-3). Plaintiff admits that Deegan made this statement, but contends that "Plaintiff lost use of the trucks during the time period that exhaust pipe and fan hubs were being replaced[.]" (Plaintiff's Response to Kenworth's Statement at ¶¶ 62-63). Moreover, the labor required to replace the parts was performed by Plaintiff's employees. (Id.). The fan hubs and flex pipes that were replaced were covered by the Kenworth warranty. (Kenworth's Statement at ¶¶ 64-65). Plaintiff points out, however, that Plaintiff's employees performed the labor. (Plaintiff's Response to Kenworth's Statement at ¶¶ 64-65). Plaintiff admits that Plaintiff elected to have the fan hubs and flex pipes sent to its facility to have Plaintiff's mechanics install the new parts.

9

(Kenworth's Statement at ¶ 66; Plaintiff's Response to Kenworth's Statement at ¶ 66).

The repairs took about 30 minutes to perform, but Plaintiff complains that Fane lost use

of the trucks during the time when these parts were being replaced. (Kenworth's

Statement at ¶ 67; Plaintiff's Response to Kenworth's Statement at ¶ 67). The only

other problems with the vehicles that did not involve the Cummins engines were broken

air sensors and excessive anti-freeze use on the two tri-axle trucks. (Kenworth's

Statement at ¶ 68). These issues were fully resolved under the Kenworth warranty.

(Id.).

Plaintiff admits that Fane did not have to pay for any warranty repairs to the

trucks or for any replacement parts, but alleges that it was required to "pay for (i) the

loss of use of the trucks while the repairs were being performed, (ii) added fuel and fuel

additive costs associated with the lower than anticipated and represented fuel

economy; and (iii) additional administrative costs associated with truck and engine

failures." (Kenworth's Statement at ¶ 69; Plaintiff's Response to Kenworth at ¶ 69).

Plaintiff eventually replaced all of the vehicles in question with vehicles manufactured

by a competitor. (Kenworth's Statement at ¶ 70). Plaintiff traded in the Kenworth trucks

on those new vehicles. (Id.). In calculating damages, Plaintiff includes losses due to

the resale of the trucks, loss of use of the trucks, increased fuel costs due to lower-

than-expected gas mileage, lost time for trips taken to get trucks repaired, and lost time

for workers whose trucks broke down or required repair. (Kenworth's Statement at ¶ 71

71; Plaintiff's Response to Kenworth's statement at ¶ 71).

Plaintiff filed a Complaint in the Supreme Court of New York, Rensselaer

County, November 20, 2012.  <u>See</u> Notice of Removal, dkt. #1, at ¶ 1.  Defendant

Cummins Northeast, Inc., removed the action to this Court on December 28, 2012.  <u>Id.</u>

After the parties engaged in discovery, Defendants filed motions for summary

judgment, bringing the case to its present posture.

## II.     ANALYSIS

### A.    Legal Standard

Defendants seek summary judgment.  It is well settled that on a motion for

summary judgment, the Court must construe the evidence in the light most favorable to

the non-moving party, <u>see</u> <u>Tenenbaum v. Williams</u>, 193 F.3d 581, 593 (2d Cir. 1999),

and may grant summary judgment only where "there is no genuine issue as to any

material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.

R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby</u>, 477

U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of

the basis for the motion and of identifying those portions of the record that the moving

party believes demonstrate the absence of a genuine issue of material fact as to a

dispositive issue.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant is

able to establish a *prima facie* basis for summary judgment, the burden of production

shifts to the party opposing summary judgment who must produce evidence

establishing the existence of a factual dispute that a reasonable jury could resolve in his

favor.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  A

party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998).

### B. Defendant Kenworth's Motion

Defendant Kenworth seeks summary judgment on several grounds, which the Court will address in turn. <u>See</u> dkt. # 33.

### i. Breach of Express/Implied Warranty

Defendant Kenworth first argues that the Court should grant Kenworth summary judgment on all of Plaintiff's breach of express warranty claims. Kenworth contends that it has met all of the obligations under the warranty agreement by repairing the parts of the vehicle covered by the Kenworth warranty. The Plaintiff's complaint was with the Cummins engine, not the Kenworth vehicle. The Cummins engine was not warrantied by Kenworth, and thus none of the issues involved in this dispute are related to the warranty Kenworth provided. Plaintiff responds by arguing that Defendant offered express warranties on the trucks, and breached those warranties by delivering trucks that failed to meet the standard promised in the warranties. Plaintiff points to the Kenworth Warranty, which promised that the trucks delivered would "'be free from defects in materials and factory workmanship." Plaintiff argues that the trucks, and not just the motors, were defective upon delivery, and the Defendant did nothing to correct the problems. The problems that Plaintiff experienced with fan hubs and flexible exhaust pipes continued even after making repairs.

Defendant also argues that Plaintiff cannot sustain any breach of implied warranty claims. Plaintiff does not respond to this argument.

The issue here is Defendant Kenworth's obligations under the alleged express warranty. As a general matter, "a cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product." Bates v. Dow Agrosciences, L.L.C., 544, U.S. 431, 444 (2005). In New York, a "seller can create an express warranty by affirmation, promise, description or sample." Kraft v. Staten Island Boat Sales, Inc., 715 F.Supp.2d 464, 472 (S.D.N.Y. 2010).[2] To prevail on an express warranty claim, a Plaintiff must "show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase' and that the warranty

_____

[2]New York's Uniform Commercial Code provides that:

(1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

NY CLS UCC § 2-313.

was relied upon[.]" <u>Schimmenti v. Ply Gem Indus.</u>, 156 A.D.2d 658, 659, 549 N.Y.S.2d 152, 154 (2d Dept., 1989) (quoting <u>Friedman v. Medtronic, Inc.</u>, 42 A.D.2d 185, 190 (N.Y. App. Div., 2d Dept., 1973)); <u>see also</u> <u>Promuto v. Waste Mgmt., Inc.</u>, 44 F.Supp.2d 628, 642 (S.D.N.Y. 1999) (In New York a breach of warranty claim requires a "showing that: (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant[.]"); <u>Kraft</u>, 715 F.Supp.2d 473 (express warranty exists under New York law when a plaintiff shows "that the statement falls within the definition of a warranty, that she relied on it, and that it became the basis for the bargain."). An express warranty is interpreted like a contract, and a Plaintiff can provide evidence of the warranty through various means. <u>Mill Printing & Lithography Corp. v. Solid Waste Management Systems, Inc.</u>, 65 A.D. 590, 590-91, 409 N.Y.S.2d 257, 258 (2d Dept. 1978). "[A]ffirmative representations" can create express warranties. <u>Symphony Fabrics Corp. v. Creations by Aria, Inc.</u>, 111 A.D.2d 650, 651, 490 N.Y.S.2d 212, 213 (1st Dept. 1985). An "express warranty is as much a part of the contract as any other term. Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled." <u>CBS, Inc. v. Ziff-Davis Pub. Co.</u>, 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1001 (1990). A party seeking indemnification under the warranty need only "[establish] that the warranty was breached." <u>Id.</u> at 504.

The parties do not dispute the existence of a warranty agreement, or that the

warranty helped induce the bargain between the parties. The question here is whether Defendant breached some portion of the warranty. Plaintiff's brief attempts to address this issue. Plaintiff describes the express warranty connected to the Kenworth vehicle as the Kenworth Truck Company Limited Warranty Agreement, which promised that "the 'Kenworth vehicle,' i.e., the trucks, would 'be free from defects in materials and factory workmenship [sic].'" In describing the breach, Plaintiff alleges that Fane began to experience problems with both the engines and trucks as soon as the vehicles were delivered. Because these problems existed and Kenworth never corrected them, Plaintiff argues, the Defendant breached the express warranty that the trucks would be free from defects in materials and workmanship and summary judgment must be denied on this issue. Defendant insists that any problems were corrected, meaning that no breach of warranty occurred. Because the warranty specifically disclaims any incidental damages, Plaintiff cannot recover on any breach-of-warranty claim.

The warranty in question provides that "Kenworth warrants directly to you that the Kenworth vehicle ("Vehicle") identified below will be free from defects in materials and factory workmanship ("Warrantable Failures") appearing under normal commercial use and service during the time or mileage limitations set forth in the attached Warranty schedule[.]" (Exh. Y to Plaintiff's Brief in Opposition ("Kenworth Warranty") at 1). The warranty also provides that "YOUR SOLE AND EXCLUSIVE REMEDY AGAINST KENWORTH AND THE SELLING DEALER ARISING FROM YOUR PURCHASE AND USE OF THIS VEHICLE IS LIMITED TO THE REPAIR AND REPLACEMENT OF 'WARRANTABLE FAILURES' AT AUTHORIZED UNITED STATES AND CANADIAN KENWORTH DEALERS," subject to the time and mileage limitations stated in the

warranty.  Id. (capitalization in original).  The warranty does not cover the entire vehicle, stating that certain components "MAY" be covered by warranties by their manufacturers, but "are NOT warrantied by Kenworth: engine and engine accessories, Allison automatic transmission, fifth wheel, tires, wheels and rims, tubes, pintle hook, hitch, batteries not listed in the Vehicle Schedule, trade accessories (such as fire extinguishers, chains, emergency kits, and tools) and items not installed by the Kenworth factory at the time of the vehicle's manufacture."  Id. (capitalization in original).  The warranty also provides that "Kenworth is not responsible for damage or loss resulting from engine horsepower upgrades."  Id. at 2.  The warranty also contains a section entitled "**WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY**."  Id. at 1 (bolding and capitalization in original).  The warranty expressly disclaims "ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."  Id. (capitalization in original).  That section also states, in relevant part:

> IT IS AGREED THAT KENWORTH AND THE SELLING DEALER SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO: LOSS OF INCOME OR LOST PROFITS; VEHICLE DOWNTIME; THIRD PARTY DAMAGE, INCLUDING DAMAGE OR LOSS TO OTHER VEHICLES OR PROPERTY, ATTACHMENTS, TRAILERS AND CARGO; LOSS OR DAMAGE TO PERSONAL CONTENTS; COMMUNICATION EXPENSES; LODGING AND/OR MEAL EXPENSES; FINES; APPLICABLE TAXES OR BUSINESS COSTS OR LOSSES; ATTORNEY'S FEES; AND ANY LIABILITY YOU MAY HAVE IN RESPECT TO ANY OTHER PERSON OR ENTITY.

Id. (capitalization in original).  The warranty goes on to provide time and mileage limits for coverage on particular components, establishing that "[p]ursuant to the terms of the attached Limited Warranty Agreement, Kenworth Truck Company will pay warranty claims for Warrantable Failures[.]" (Id.).

This document, which Plaintiff claims is the source of its express warranty claims against Defendant Kenworth, makes clear that Kenworth is obligated to pay for repairing and replacing the parts of the vehicle covered by the warranty if those parts prove defective.  The warranty provides coverage for "warrantable failures," which are defined as "defects in materials and factory workmanship."  Plaintiff argues that the failure of the truck to operate properly gives rise to a claim under this express warranty. Plaintiff's position, however, ignores the terms of the warranty and Plaintiff's own evidence presented in opposition to the motion for summary judgment.

The warranty upon which Plaintiff relies requires the Defendant to pay any warranty claims for "defects in materials and factory workmanship."  Plaintiff's evidence points to several claims made for such failings.  The evidence supplied by the Plaintiff, however, also indicates that Plaintiff was not charged for parts or repairs made for these defects.  By the plain terms of the warranty, Defendant acted as the warranty required.  Defendant paid warranty claims.  As such, Plaintiff cannot make out a claim for breach of warranty on the basis of such defects, since a breach of express warranty claim in New York requires a showing that Defendant actually breached its obligations under the warranty.  See  Promuto, 44 F.Supp.2d at 642; see also, Craig v. American Dist. Tel. Co., 91 Misc. 2d 1063, 1065, 399 N.Y.S.2d 164, 165 (Monroe Cty., 1977) (granting judgment on express warranty claim because "[t]he complaint contains no allegation of fact stating in what respect any warranty was breached nor does it contain a statement of fact indicating that any breach was the proximate cause of the [plaintiff's injuries].").

Plaintiff's claim that the vehicles were unfit for the jobs for which they were

purchased could be construed as a claim for breach of an implied warranty of fitness for a particular purpose. That claim is no more availing, since the warranty plainly disclaims any implied warranties. Plaintiff's brief does address Defendant's argument in this respect. In any case, the New York Uniform Commercial Code provides that "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous." NY CLS UCC §2-316(b). "Warranties of merchantability and fitness for use are implied by" the UCC, therefore, "but may be excluded using the proper language." <u>Basic Adhesives, Inc. v. Robert Matzkin Co.</u>, 101 Misc.2d 283, 288, 420 N.Y.S.2d 983, 986 (Bronx Cty. 1979). Thus, "the Uniform Commercial Code allows parties, within limits established by the code, to modify or exclude warranties and to limit remedies for breach of warranty." <u>Wilson Trading Corp. v. David Ferguson, Ltd.</u>, 23 N.Y.2d 398, 402, 244 N.E.2d 685, 687 (1968); <u>Maltz v. Union Carbide Chems. & Plastics Co.</u>, 992 F.Supp. 286, 304 (S.D.N.Y 1997) ("It is well settled that under New York law, parties to a contract may exclude or modify implied warranties so long as the warranty disclaimer is conspicuous and specific."). The disclaimer must use "'language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.'" <u>Basic Adhesives</u>, 101 Misc.2d at 288 (quoting NY CLS UCC 2-316, subd [3] par [a]).

Warranty disclaimers "in all capital letters and [specifying] the warranties that are being disclaimed" have been found valid. <u>Maltz</u>, 992 F.Supp. at 304. By contrast, a disclaimer that "does not alert or call the readers attention to the exclusion of any

warranty of fitness for a particular purpose" has been found invalid. <u>Deven</u> <u>Lithographers v. Eastman Kodak Co.</u>, 199 A.D.2d 9, 604 N.Y.S.2d 563,564 (1st Dept. 1993); <u>Verdier v. Porsche Cars N. Am. Inc.</u>, 255 A.D.2d 436, 437, 680 N.Y.S.2d 596 (2d Dept. 1998) (summary judgment denied because "[q]uestions exist with respect to whether the disclaimer upon which [defendant] relies was sufficiently conspicuous and whether it was communicated to the plaintiff."). The New York UCC defines "conspicuous," stating that "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." NY CLS UCC § 1-201(10). "A printed heading in capitals . . . is conspicuous," as is "[l]anguage in the body of a form" that "is in larger or other contrasting type or color." <u>Id.</u>

The disclaimer cited above meets the requirements for enforcement described by the New York Courts. The disclaimer sets out clearly, in capital letters and set apart in a section entitled "warranty disclaimer and limitations of liability," that Kenworth offers no warranty of merchantability or fitness for a particular purpose. Kenworth Warranty, at 1. The disclaimer is conspicuous and obvious, and sets out in all capital letters the specific warranties that are being disclaimed. A reasonable person reading the warranty could not help but notice the disclaimer. Thus, to the extent that Plaintiff's claim is that the trucks were not suitable for the purpose for which they were sold, Defendant has expressly disclaimed any warranty for those trucks. Summary judgment is appropriate on that portion of the claim as well.

Moreover, the warranty also expressly disclaims most of the damages that Plaintiff seeks to recover from the Defendant. The affidavit of Warren Fane, in explaining the continued problems with the trucks, provides that "[w]hile the attempts by

Tri-State, Kenworth and Cummins came at no additional cost to Fane, Fane did incur costs associated with the loss of use of the trucks while those repair attempts were being made, incurred costs as a result of having [to] pay its own in-house mechanics to repair the trucks' fan hubs and exhaust pipes, incurred costs as a result of having direct shipments and/or change trucks when engine failures occurred, and, ultimately, incurred a loss when Fane sold the ten (10) trucks due to repeated failure of Tri-State, Kenworth and Cummins to correct the issues and problems identified above." (Warren Fane Affidavit, un-lettered exhibit to Plaintiff's Response in Opposition, dkt. # 43-29, at ¶ 28).

Defendant argues that the limitation in liability clause contained in the warranty must be enforced. Plaintiff does not address this issue, but instead cites to the general law of damages under the UCC to argue that Plaintiff can recover the difference between the cost paid for the trucks and the cost for Plaintiff of purchasing replacement vehicles. Plaintiff admits that it can claim no damages for repairs not completed on the trucks or materials not replaced, but instead seeks damages for the consequences of the malfunctioning engines, such as lost time for employees, replacement vehicles, and the loss that Fane took when reselling the trucks. To the extent that such damages are consequential damages, they are prohibited by the terms of the warranty and Plaintiff cannot recover them. "A limitation on liability provision in a contract represents the parties' agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, 84 N.Y.2d 430, 436, 643 N.E.2d 504, 507 (1994). Courts enforce such provisions "absent a special

relationship between the parties, a statutory prohibition, or an overriding public policy."

Smith-Hoy v. AMC Prop. Evaluations, Inc., 52 A.D.3d 809, 810, 862 N.Y.S.2d 513, 516

(2d Dept. 2008). A party can also avoid such limitations by demonstrating that "the

party seeking to avoid liability has engaged in grossly negligent conduct evincing a

'reckless disregard for the rights of others.'" Pacenet Network Ltd. v. KDDI Corp., 912

N.Y.S. 2d 178, 180 (1st Dept. 2010) (quoting Colnaghi, U.S.A. v. Jewlers Protection

Servs., 81 NY2d 821, 823-24, 611 N.E.2d 282 (1993)).

      The warranty expressly disclaims a right to consequential damages. Plaintiff

has not pointed to any evidence or made any argument to demonstrate either special

conditions preventing the enforcement of the limitation on liability or conduct in reckless

disregard for others' rights on the part of the Defendant. To the extent that the

damages Plaintiff seeks are consequential damages, Plaintiff could not recover even if

there were evidence to support the breach-of-warranty claims.

      Plaintiff argues, however, that Fane could recover for the cost of purchasing

replacement vehicles.[3] Unfortunately for the Plaintiff, no breach of warranty has been

---

    [3]Plaintiff eventually sold the 10 trucks at a loss and replaced them with other
vehicles which better fit the Plaintiff's needs. Plaintiff contends that New York's version
of the Uniform Commercial Code permits recovery for such damages, since the Code
provides that "[t]he measure of damages for breach of warranty is the difference at the
time and place of acceptance between the value of the goods accepted and the value
they would have had if they had been as warranted, unless special circumstances show
proximate damages of a different amount." NY UCC § 2-714(2). The Second Circuit
Court of Appeals, applying New York law, has found the recovery permitted under this
provision to be distinct from consequential damages, holding that "[t]here is a difference
between the loss of the inherent economic value of the contractual performance as
warranted . . . and the loss of profits that the buyer anticipated garnering from
transactions that were to follow the contractual performance." T.Co Metals, LLC v.
Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010). Because diminished
value is distinct from damages flowing from the breach, "a buyer may recover the

shown, and the only breach of warranty that would likely cover the diminished value of the tractors would be the breach of an implied warranty of fitness for a particular purpose. Since Plaintiff does not address Defendant's argument that any implied warranties were validly disclaimed in the written warranty, there was no breach of warranty that could give rise to a claim of diminished value. The Court finds that Plaintiff could not recover any damages with respect to diminished value, and that summary judgment must be granted with respect to this portion of the claim as well.

### ii. Breach of Contract

Defendant next argues that Plaintiff's breach-of-contract claims must be dismissed. Defendant contends that almost all of Plaintiff's claims relate to engine issues. The engine was not produced by Kenworth, and thus no claims can exist for those claims. Any problems with the vehicles that may have been subject to Kenworth's warranty or any promises made by Kenworth were resolved pursuant to the warranties. Moreover, Kenworth built the vehicles to Plaintiff's specifications. Plaintiff therefore has no claim for breach of contract against Kenworth. Again, Plaintiff offers no response to this portion of the motion. Plaintiff apparently agrees with the Defendant that no claim for breach of contract can be maintained based on the facts in the record. The Court agrees, as the evidence indicates that the Defendant delivered the trucks as specified in the purchase order, the contract here at issue. The Court will

_____

diminution in the value of the contractual goods as warranted even where there is a contractual exclusion of consequential damages." Id. Thus, Plaintiff could conceivably recover the diminished value of the trucks that was the result of the Defendant's breach of warranty.

grant the motion for summary judgment in this respect as well.[4]

### iii.  Damages

Finally, Defendant argues that the warranty in question contained an express provision disclaiming any potential liability for incidental or coincidental or coincidental damages.  The Court has already explained that Plaintiff cannot prove Defendant liable on any claims.   As such, the question of damages is moot.

### C.  Defendant Tri-State's Motion

Defendant Tri-State Diesel, Inc. ("Tri-State"), also seeks summary judgment on several grounds, which the Court will address in turn, as appropriate.  <u>See</u> dkt. #34.

### i.  Warranty Claims Based on the Written Kenworth Warranty

Tri-State first argues that Plaintiff cannot prevail on any warranty claims, whether express or implied.  Tri-State contends that the only warranty that can apply in this case is the express warranty provided by Kenworth and discussed above. Defendant points out that the Kenworth Warranty represents that the warranty applies to both Kenworth and the "Selling Dealer," Tri-State.  Tri-State offered no distinct warranty separate from the Kenworth warranty.  Since Plaintiff has not pointed to any

---

[4]Plaintiff's claim here is for breach of contract.  In New York, "an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach of contract by the other party; and (4) damages."  <u>Rexnord Holdings v. Bidermann</u>, 21 F.3d 522, 525 (2d Cir. 1994).  In general, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to tits terms.  Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."  <u>W.W.W. Assocs. v. Giancontieri</u>, 77 N.Y.2d 157, 162, 566 N.E.2d 639, 642 (1990).  "Whether or not a writing is ambiguous is a question of law to be resolved by the courts."  <u>Id.</u>

provision of the warranty agreement between the parties which Defendant Tri-State breached, Tri-State argues, no warranty claim can be made.  Any breach of warranty on the engine is an argument between Cummins and Plaintiff, and does not involve Tri-State.  Tri-State also contends that no breach of the Kenworth warranty occurred. Plaintiff responds by claiming that Defendant breached the Kenworth warranty by providing trucks that were not free from defects, and never fully corrected those defects.

Plaintiff's arguments here are essentially the same arguments Plaintiff makes in connection with Kenworth's motion for summary judgment on the express warranty claim.  Plaintiff's arguments here fail for the same reasons: the Defendant did not breach the warranty but instead acted as obligated under the warranty's terms. Summary judgment will be granted to Defendant Tri-State on the same basis as for Kenworth, *supra*.

### ii.  Warranty Allegedly Created During Purchase of the Vehicles

Defendant Tri-State also contends that the negotiations surrounding the purchase of the trucks did not create any sort of express warranty.  Any statements made by Tri-State representatives were merely generalized ones and did not create any sort of express warranty.  No promises were made about the suitability of the vehicles for Plaintiff's purposes, the performance of the engines, or the fuel economy those engines delivered.  Instead, Tri-State's representative offered a simple commendation of the Cummins engine.  Any other statements were merely puffery and cannot be seen as warranties.  Tri-State likewise argues that none of the comments made in

24

negotiations for the purchase of the truck could be considered warranties concerning gas mileage.  Plaintiff disagrees, contending that Tri-State's representative, Tom Jennings, made express representations concerning the performance and fuel milage that could be obtained using the Kenworth machines.  Plaintiff relied on these representations and purchased the trucks.  Only after purchase did Plaintiff discover that the vehicles did not provide the promised performance.

The question in this instance is whether the parties created an express warranty during the negotiations that led to the purchase of the vehicles.  As explained above, "a cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product."  Bates, 544, U.S. at 444.  In New York, a "seller can create an express warranty by affirmation, promise, description or sample."  Kraft, 715 F.Supp.2d at 472 (S.D.N.Y. 2010).  To prevail on an express warranty claim, a Plaintiff must "show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase' and that the warranty was relied upon[.]"  Schimmenti, 156 A.D.2d at 659 (quoting Friedman, 42 A.D.2d at 190); see also Promuto, 44 F.Supp.2d at 642 (In New York a breach of warranty claim requires a "showing that: (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant[.]"); Kraft, 715 F.Supp.2d 473 (express warranty exists under New York law when a plaintiff shows "that the statement falls within the definition of a warranty, that she relied on it, and that it became the basis for the bargain.").

An express warranty is interpreted as a contract, and a Plaintiff can provide evidence of the warranty through various means. Mill Printing & Lithography Corp., 65 A.D. at 590-91. "[A]ffirmative representations" can create express warranties. Symphony Fabrics Corp., 111 A.D.2d at 651. An "express warranty is as much a part of the contract as any other term. Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled." CBS, Inc., 75 N.Y.2d at 503. A party seeking indemnification under the warranty need only "[establish] that the warranty was breached." Id. at 504.

Although there is evidence from which it could be concluded that an express warranty by Tri-State existed[5], the Court must find, however, that no such claim can be

_____

[5]The evidence in this case indicates that Plaintiff began looking to purchase ten new trucks in September 2010. (Defendant Tri-State's Statement of Material Facts ("Tri-State Statement"), dkt. # 34-1 at ¶ 2). Greg Fane, son of the Plaintiff's founder and president Warren Fane, was directly involved in attempting to purchase the vehicles in question. (Id. at ¶¶ 4-7). In negotiating the purchase of the ten additional trucks, Plaintiff had specific expectations as to power, transmissions, gear ratios, and weight. (Id. at ¶ 8; Plaintiff's Response to Tri-State Statement of Material Facts ("Plaintiff's Response to Tri-State"), dkt. # 44-1, at ¶ 8). Plaintiff sought trucks similar in performance to those already in Plaintiff's fleet. (Id., at ¶¶ 8-9).
Eventually, Greg Fane, with assistance from Warren Fane, negotiated the purchase of the ten trucks from Defendant Tri-State. (Tri-State Statement at ¶ 16; Plaintiff's Response to Tri-State at ¶ 16). Edward Thomas ("Tom") Jennings negotiated this sale with the Plaintiff. (Id.). Jennings had been employed by Tri-State since 1996. (Tri-State Statement at ¶ 17). Greg Fane called Tri-State and spoke with Tom Jennings. (Id. at ¶ 22). Jennings had initially contacted Plaintiff in July 2010. (Id. at ¶ 23). The parties negotiated the deal over the telephone and by fax. (Id. at ¶ 24). Fane sought specific features on the trucks: a 240 inch wheel base, 485 horsepower engine, 391 gear ratio, 13-speed transmission, 13,200 pound front axle and 46,000 pound rear axle. (Id. at ¶ 25). According to the Defendant, Jennings helped Fane "fine tune" these specifications. (Id. at ¶ 26). Plaintiff contends that, after hearing of Fane's needs,

established.  The Kenworth Warranty provides that "**This limited warranty is the sole warranty made by Kenworth and the Selling Dealer.  Except for the above warranty, Kenworth and the Selling Dealer make no other warranties, express or implied."**  (Kenworth Warranty, at 1) (bolding in original).  The Warranty is signed by a representative of the Kenworth Truck Company, Warren Fane and a representative of

_____

Jennings "recommended that Plaintiff purchase the trucks at issue."  (Plaintiff's Response to Tr-State, at ¶ 26).  After being informed of Plaintiff's intended uses, Jennings suggested that Plaintiff purchase 500 horsepower engines.  (Id. at ¶ 28).

Greg Fane testified that after informing Jennings of Plaintiff's needs for the trucks, he had a second conversation with Jennings by telephone.  (See Greg Fane Deposition ("Fane Dep."), exh. C to Plaintiff's Response to Defendant's Motion, dkt. # 44-5, at 42).  After receiving Fane's specifications, Jennings had "talked to his engineer–engineers or the people at Cummins . . . and they had recommended this bigger–this 500."  (Id.).  "It was more suitable for our application."  (Id. at 42-43).  Fane responded that "'[y]ou know what I'm looking for . . . If that's what it takes to do what I need it to do, you know, we'll do the 500.'"  Id. at 43.  Jennings had convinced Fane that he needed a bigger engine to meet his needs.  Id. at 44.  Fane at first had requested a 485-horsepower Cummins engine because he believed that engine would deliver 1700-1800 foot-pounds of torque.  (Id. at 45-46).  Jennings, however, told him that he needed a 500-horsepower engine to achieve that much torque.  (Id. at 46).  Fane also testified that Jennings informed him that his fuel mileage would improve with such engines.  (Id.).  Jennings told him that the larger engines would "help fuel economy."  (Id. at 47).  Fane soon contacted Jennings to inform him that they had a deal.  (Id. at 55).

Defendant argues that no evidence exists to support Plaintiff's claim that Tri-State offered an express warranty as to the performance and fuel mileage that the trucks would provide.  The Court finds, however, that there is evidence in the record which, if believed by a jury, could lead to a finding that there was an "'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase' and that the warranty was relied upon[.]" Schimmenti, 156 A.D.2d at 659.  The evidence related above indicates that Jennings, when given the information on the performance that Plaintiff sought from a vehicle, informed Fane that a larger engine was necessary.  He told Fane that a 500-horsepower engine would meet the Plaintiff's performance requirements.  He also informed Fane that such an engine would deliver improved gas mileage.  Based on this information, Plaintiff purchased the vehicles.  The vehicles, once delivered, were deficient in power, gas mileage, reliability, and other aspects of performance that were part of Jenning's promises to Fane.  This evidence could be used by a jury to find the existence of an express warranty by Tri-State, and also to find that the vehicle delivered did not meet that warranty.

the authorized dealer.  (Id. at 2).  The name of the Dealer is listed as Tri-State

Kenworth, the moving Defendant here.  Thus, the Defendant disclaimed all warranties

not contained in the written document.  For the reasons stated above with respect to

other disclaimers, this court finds the disclaimer of other warranties valid with respect to

any express warranties.  The warranty clearly applies to Tri-State, as well as to

Kenworth, and clearly excludes any prior oral representations like the ones at issue

here.  Courts in New York have enforced such exclusions when the language of the

exclusion, as here, indicates that the written warranty represents the sole agreement

between the parties and excludes all other representations.  See, e.g., Pennsylvania

Gas Co. v. Secord Bros., Inc., 73 Misc. 1031, 1038, 343 N.Y.2d 256, 263-64

(Chautauqua Cty., 1973) (rejecting an express warranty claim based on oral

representations about the product based on a clause in the written warranty "indicat[ing]

that the parties intended that there would be no survival or application of warranties

either express or implied.").

Because the parties agreed that no warranty except those in the written

warranty could apply to this case, the Court must grant summary judgment to Plaintiff

on the express warranty claims arising from the sales negotiations in this matter.

### iii.  Implied Warranties

Defendant next argues that the disclaimer in the Kenworth warranty

preventing any implied warranty claims applies to Tri-State as well.  Plaintiff does not

respond to this argument, which is based on the same legal grounds as Kenworth's

argument on implied warranties.  The motion will be granted for the same reason as

Kenworth's motion was granted: the Kenworth warranty clearly and unequivocally

28

disclaims any implied warranties and such a disclaimer is enforceable in this context.

### iv. Limitation on Damages

Finally, Tri-State contends that the limitation on damages contained in the Kenworth warranty apply to this case and establish that Plaintiff cannot obtain any consequential damages on its warranty claims. Plaintiff responds that Tri-State can be liable for the damages associated with the cost of replacing the deficient trucks and engines sold by Tri-State. As the Court has found that Plaintiff cannot prevail on any of its claims against Tri-State, this portion of the motion is moot, and the Court will not address it.

### D.    Defendant Cummins Northeast's Motion

Defendant Cummins Northeast, LLC, has also filed a motion for summary judgment, alleging that Cummins cannot be liable because Defendant played no role in the manufacture or sale of the engines about which Plaintiff complains. <u>See</u> Dkt. 35. Defendant contends that Plaintiff cannot prevail on either claim raised against Cummins: breach of express warranty or breach of implied warranty. Defendant argues that Plaintiff cannot establish the existence of an express warranty by Cummins Northeast and cannot demonstrate the privity of contract required to establish an implied warranty.

### i. Expresss Warranty

Defendant Cummins argues that Plaintiff cannot establish an express warranty claim because Plaintiff cannot establish the existence of any such warranty provided by the Defendant. Cummins argues its business was not the sale or

manufacture of the engines, and that Cummins did not make any warranty to Plaintiff upon the purchase of the engines. Instead, Cummins Northeast simply provided warranty repairs as an agent of Cummins, Inc., which had actually manufactured the engines and provided the warranty. Plaintiff responds that Cummins breached an express warranty by "failing to adequately and appropriate [sic] diagnosis [sic], remediate and/or repair the litany of engine-related problems that Plaintiff experienced with the" Cummins engine. Plaintiff argues that the engines were purchased with a warranty from Cummins that covered parts and labor, that Cummins undertook to repair the engines under the warranty, and that these repairs did not solve the problems with the engines. Since Cummins had represented that its repairs would solve the engine failures and deficiencies and Plaintiff relied upon those representations, Cummins breached an express warranty.

Plaintiff apparently does not dispute that the warranty supplied with the Cummins engines was not a warranty that Defendant Cummins Northeast issued. Instead, Plaintiff simply contends that the repairs made by Defendant Cummins Northeast were inadequate and failed to cure the defects in the engine as promised. In other words, Plaintiff alleges that Defendant breached an express warranty created when Plaintiff brought the trucks in for repair to Defendant Cummins Northeast. Without citing to any evidence of statements by agents or representatives of Defendant Cummins, or any written guarantees at the time the repairs to the engines were performed, Plaintiff now argues that the express warranty claim is based on the failure of the repairs to make the trucks work as Plaintiff desired. Defendant responds that this claim amounts to a change in the theory of liability after discovery has closed, and one

not supported by any evidence in the record.

Plaintiff does not point to any place in the record where evidence exists to support its claim that "Cummins expressly represented that it was capable of fixing the many engine failures and deficiencies suffered by Plaintiff." Dkt. #42 at 9. Plaintiff simply asserts that such a promise existed without citing to who made that promise, where, or when. Indeed, in responding to Defendant Cummins' statement of material facts, Plaintiff admitted that all repairs were performed pursuant to the Cummins, Inc., warranty, and were performed by Defendant Cummins Northeast at no cost to the Plaintiff. (See Defendant Cummins Statement at ¶¶ 19-20). To the extent that Plaintiff seeks to raise a warranty claim based on the repairs performed, Plaintiff could not prevail against Cummins Northeast–assuming that Cummins Northeast had actually issued the warranty–for the same reasons that Plaintiff cannot prevail against Kenworth on an express warranty claim. Cummins fixed the parts at no cost, and continued to attempt to do so under the terms of the warranty. As with the claims against Kenworth, Plaintiff's claim here is really an implied warranty claim based on an implied warranty of merchantability or implied warranty of fitness for a particular purpose. As explained below, Plaintiff could not prevail on either claim.

Plaintiff therefore points to no record evidence to support its claim that Defendant Cummins, which was performing repairs pursuant to a warranty issued by Cummins, Inc., not a defendant, had somehow warrantied that those repairs would completely solve any problems caused by the trucks. In the context of the instant motion, the burden is on the Plaintiff to point to evidence which, if believed, would cause a jury to find for the non-moving party. Defendant has produced evidence to

establish that it made no express warranty related to the engines, and, as explained previously, Plaintiff must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co., 475 U.S. at 587.  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  Plaintiff does not even point to the pleadings, much less any evidence in the record, but simply asserts in its brief that evidence exists.  Plaintiff therefore simply relies on "'conclusory allegations'" and "'unsubstantiated speculation'" without citation to the record.  Northeast Research, LLC v. One Shipwrecked Vessel, 729 F.3d 197, 214 (2d Cir. 2013) (citing Scotto, 143 F.3d at 114).  Such assertions cannot defeat a property-supported motion for summary judgment.  Id.  Plaintiff has failed to meet its burden, and the Court will grant the motion on these grounds.

### ii.  Implied Warranty

Defendant next argues that Plaintiff cannot prevail on its breach-of-implied warranty claims against Cummins.  Such claims require privity of contract between Cummins and Plaintiff at the time the engine was purchased, and no such privity existed.  While Plaintiff urges the Court to deny the Defendant's motion in its entirety, the Plaintiff offers no actual argument in response to Defendant's position that no implied warranty was ever offered, and does not deny that Cummins never had any contact with the Plaintiff's representatives before the engines were purchased.

New York law is clear that where there is "no privity between the purchaser

and the defendant there can be no implied warranty." Arthur Jaffee Assocs. v. Bilsco Auto Serv., 58 N.Y.2d 993, 995, 448 N.E. 2d 792 (1983); see also, Kolle v. Mainship Corp., No. 04cv711, 2006 U.S. Dist. LEXIS 28956, *13 (S.D.N.Y., Apr. 20, 2006) ("New York law requires privity in order for Plaintiff to assert a breach of an implied warranty."). The Second Circuit Court of Appeals has emphasized that this privity requirement applies to an "implied warranty of fitness for a particular purpose," because such a warranty arises "only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 249 (2d Cir. 1986). Privity is required "because the creation of the warranty requires a direct exchange between buyer and seller." Id. Thus, "no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." Lexow & Jenkins v. Hertz Commercial Leasing Corp., 504 N.Y.S.2d 192, 193-94, 122 A.D.2d 25, 26 (2d Dept. 1986).

Courts in New York have noted that "privity of contract" has been "traditionally defined by Black's Law Dictionary as 'that connection or relationship which exists between two or more contracting parties[.]" Piper Acceptance Corp. v. Barton, No. 83 Civ. 4998, 1987 U.S. Dist. LEXIS 175, at *4 (S.D.N.Y. Jan. 14, 1987); see also, Impulse Mtkg. Group, Inc. v. Nat'l Small Bus. Alliance, No. 05cv7776, 2007 U.S. Dist. LEXIS 42725 (S.D.N.Y., Jun. 12, 2007) ("Several courts, relying on Black's Law Dictionary, have defined 'privity of contract' to mean '[t]he relationship between the parties to a contract, allowing them to sue each other but preventing a third party from doing so.'")

33

(quoting BLACK'S LAW DICTIONARY 1237-38 (8th Ed. 2004)); <u>Diarama Trading Co. v. J.</u>

<u>Walter Thompson USA, Inc.</u>, No 01 Civ. 2950, 2005 U.S. Dist LEXIS 19496, at *33

(S.D.N.Y. Sept. 6, 2005) ("The Black's Law Dictionary definition of privity makes no

mention of a written contract, defining the term as 'the connection or relationship

between two parties, each having a legally recognized interest in the same subject

matter (such as a transaction, proceeding, or piece of property); mutuality of interest.")

(quoting BLACK'S LAW DICTIONARY at 1237 (8th Ed. 2004)).

Plaintiff admits facts that undermine any claim to privity of contract, and thus

any implied warranty. Defendant states, for instance, that "Cummins Northeast did not

manufacture or warrant the engines in the trucks purchased by Fane, or sell them to

anyone in the chain of distribution of those engines and trucks, including Kenworth or

Tri-State." (Cummins Statement at ¶ 10). Plaintiff admits this statement, and only adds

that Cummins Northeast worked to repair the engines. (Plaintiff's Response to

Cummins Statement at ¶ 10). Plaintiff also admits, with the same caveat, that "the

Cummins engines were manufactured and warranted by Cummins Inc. and sold to

Kenworth, who built the trucks that Tri-State sold to Fane." (Cummins Statement at ¶

11; Plaintiff's Response to Cummins Statement at ¶ 11). Moreover, "Cummins

Northwest was not involved in the selection of the Cummins engines for Fane's trucks."

(Cummins Statement at ¶ 12). Indeed, Plaintiff admits that "Cummins Northwest was

not aware of Fane's purchase of the 10 Kenworth trucks containing Cummins engines

until sometime after Fane took delivery of the trucks in the fall of 2010." (<u>Id.</u> at ¶ 13).

Thus, Plaintiff admits that no contractual relationship was formed by the

parties and no privity of contract existed at the time that an implied warranty would have

been created.  Plaintiff admits that no relationship existed between Defendant Cummins

and Fane outside of Defendant's express warranty-related repairs on the Cummins

Engines.  Plaintiff does not even attempt to argue that these repairs created an implied

warranty that Defendant has breached, and could not.  Defendant Cummins did not

provide an implied warranty, and summary judgment will be granted Defendant on this

claim.

Even if the Court could conclude that an implied warranty existed, the

Cummins Warranty issued when the trucks were purchased disclaims any implied

warranties.  The disclaimer is prominently displayed in a section of the warranty entitled

"limitations," and is stated in all capital letters and bold type.  (See Exh. A. to Affidavit of

Dan Davis, dkt. #35-11).  The disclaimer states:

**THIS WARRANTY AND THE EMISSION WARRANTY SET FORTH HEREWITH ARE THE SOLE WARRANTIES MADE BY CUMMINS IN REGARD TO THESE ENGINES.  CUMMINS MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE**

(Id.) (capitalization and bolding in original).  The manufacturer of the engine thus clearly

disclaimed any implied warranties.  For the same reasons that the disclaimer in the

Kenworth warranty prevents Plaintiff from making any claim of an implied warranty, this

disclaimer prevents Plaintiff from succeeding on its implied warranty claims against

Cummins.  The Court will therefore grant the motion with respect to Plaintiff's implied

warranty claims.

III.    **CONCLUSION**

For the reasons stated above, the Court will grant each of the moving

Defendants' motions for summary judgment, dkts. 33-35.

**IT IS SO ORDERED.**

Dated:May 7, 2014


Thomas J. McAvoy
Senior, U.S. District Judge